## ROSS v. REYNOLDS CATTLE CO.
### (No. 2770.)

(Court of Civil Appeals of Texas. Texarkana. June 6, 1923. Rehearing Denied June 14, 1923.)

**Appeal and error ⬳1001(1)—Verdict supported by evidence not disturbed.**

A verdict for plaintiff on special issues as to conformity of shipment of horses to requirement of contract will not be disturbed, where supported by evidence.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by the Reynolds Cattle Company against W. R. Ross. Judgment for plaintiff, and defendant appeals. Affirmed.

Ross, Ross & Alexander, of Fort Worth, for appellant.

Capps, Cantey, Hanger & Short, of Fort Worth, for appellee.

LEVY, J. The suit is by the appellee against the appellant, based on the following written contract:

"This agreement, made and entered into this 19th day of July, 1920, by and between the Reynolds Cattle Company, a corporation, of Fort Worth, Texas, party of the first part, and W. R. Ross, party of the second part, also of Fort Worth, Texas, witnesseth:

"That for and in consideration of the payment to the party of the first part by the party of the second part of the sum of five thousand and no/100 dollars to it in hand paid, the receipt thereof being hereby expressly acknowledged by the party of the first part and the covenants hereinafter mentioned to be performed, the party of the first part being the owner of approximately two thousand horses of all ages, sizes, color and sexes and branded ( ) on the left thigh and being in the county of Phillips and the surrounding range in the state of Montana, agrees to sell to the party of the second part and does hereby grant unto the party of the second part an option for the period of four mo. from the date of this instrument on all of said horses at the rate of fifteen and no/100 dollars per head for each clean and merchantable horse over the age of one year in said two thousand horses, all blemished horses consisting of hipped horses, one-eyed horses, fistulated horses, big-hocked horses, and all horses with like or similar defects together with all colts belonging to and being a part of the group of horses above referred to numbering approximately two thousand horses to be included in the price paid for the clean and merchantable horses over the age of one year and no extra charge is to be made for said defective horses or colts, all horses under the age of one year to be considered as colts, and to deliver such of said horses and at such time within the period for which this option is granted as the party of the second part may direct on board suitable cars at Malta, Montana, but in no case shall the party of the first part be required to deliver more than two thousand horses unless given a notice of fifteen days prior to the day upon which the horses so ordered are to be delivered in Malta, Montana, as above set forth.

"It is further agreed by and between the parties hereto that the party of the second part shall pay to the party of the first part fifteen and no/100 dollars for each and every clean and merchantable horse over the age of one year among the horses so ordered by the party of the second part and delivered according to the terms of this agreement by the party of the first part, said payment to be made by the party of the second part to the party of the first part within 15 days after the delivery of each order of horses and said payment is to be made in Fort Worth, Texas.

"The parties hereto further agree that the party of the second part may require all of the horses above referred to to be delivered in not more than ten deliveries.

"It is further agreed by and between parties hereto that the sum of five thousand and no/100 dollars on this day paid to the party of the first part by the party of the second part shall be a part of the consideration for said horses and is to be applied in payment of the last horses delivered under this contract of the value of five thousand and no/100 dollars.

"It is still further agreed by the parties that the party of the first part shall deliver said horses to the party of the second part free from any and all incumbrances and that upon each delivery of horses to the party of the second part and the payment therefor as herein provided for said party of the first part shall execute and deliver to the party of the second part a bill of sale vesting a clear and perfect title to said horses so delivered in the party of the second part.

"It is further agreed by the parties hereto that in the event that the parties of the first part shall fail to perform the obligations herein contracted the party of the first part shall pay to the party of the second part the sum of five thousand and no/100 dollars together with all damages which the party of the first part shall have caused the party of the second part to sustain.

"The parties to this agreement further covenant that in the event that the party of the second part fails and neglects to exercise the option herein granted the sum of five thousand and no/100 dollars paid by the party of the second part unto the party of the first part will be forfeited unto the party of the first part.

"It is still further agreed by and between the parties hereto that in the event that the party of the second part should elect to purchase any or all of said horses and have them remain on the range which they now occupy he may do so and upon making said election he

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

shall execute to the party of the first part a written receipt acknowledging and accepting said delivery and deliver said receipt to the party of the first part and the party of the second part shall have the privilege of permitting such horses as he elects to leave on the range to remain there for a period of two years from the date of this instrument. The delivery in this paragraph provided for shall be in lieu of any other delivery in this agreement provided for.

"It is further agreed by the parties hereto that for and in consideration herein stated that in the event the party of the first part is unable to deliver all of the said horses herein mentioned by the reason of the fact that they are astray and cannot be located by reasonable diligence, the party of the second part is hereby granted by the party of the first part a further option and right to purchase said astray horses included under this contract until the fifteenth day of November, 1921, and it is still further agreed that in the event the party of the second part does not elect to exercise said further option here granted he shall not be subjected to any penalty nor shall the party of the first part be entitled to any damages therefor.

"It is still further agreed by the parties hereto that time is the essence of this agreement."

In accordance with the terms and provisions mentioned in the contract, as the petition alleges, the Reynolds Cattle Company delivered to W. R. Ross during the month of August, 1920, 282 head of horses, and in September, 1920, 531 head of horses, all of which were accepted and paid for by W. R. Ross. A third delivery, consisting of 570 head of horses, was tendered W. R. Ross, of which he accepted 288 head, and refused to accept 282 head, notwithstanding the 282 head rejected were the kind of horses mentioned in the contract for which W. R Ross should pay $15 per head. Further, W. R. Ross, as alleged, "gave notice to this plaintiff that he would not take any more of the horses remaining to be delivered to him under said contract, which was approximately 400 head." The contract price to be paid for the horses is sought to be recovered.

The appellant, Ross, demurred and excepted to the petition, pleaded general denial, and by way of cross-action set up: (1) That defendant had paid for "the balance of the clean and merchantable horses covered by said contract," all of which came to the total sum of $3,570, leaving the sum of $1,430 of the $5,000 earnest money due and unpaid him by plaintiff, and for which he sues; (2) that defendant paid out for the plaintiff the sum of $1,266.55, and the further sum of $215, which is due and unpaid, and for which defendant sues; and (3) that the plaintiff agreed to pay, and has failed to do so, a commission of $433.50 for the sale of horses at Malta, Mont.

The following facts appear as admitted:

(1) That the contract was duly made; (2) that the plaintiff delivered and the defendant accepted and paid for the 282 and 531 head of horses delivered as the first and second installments; (3) that the plaintiff agreed to pay the defendant $423 as commissions for sale of horses at Malta. The dispute arises respecting the third installment, for which the defendant has not paid, of 570 horses in October, 1920. The plaintiff claimed that the entire installment were "clean and merchantable horses," within the provisions of the contract, and that the defendant wrongfully rejected the horses. The defendant claimed that the horses were not in accordance with the terms of the contract.

The jury decided, on special issues, in effect, as follows: (1) That 260 of the 282 horses of the third installment rejected by the defendant were clean and merchantable according to the terms of the contract; and (2) that 271 horses of the third installment the defendant accepted as being in the terms of the contract, "over one year of age, neither hipped, one-eyed, fistulated, or big-hocked, nor with like and similar defects." On the verdict of the jury and the admitted facts, the court entered judgment for the plaintiff, crediting the $423 due defendant.

We conclude that the evidence supports the verdict of the jury. We have given the assignments of error made by the appellant careful consideration, and have concluded that they should be overruled, as presenting no reversible error.

The judgment is affirmed.